# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# MONROE DIVISION

| | |
|---|---|
| **DEMONE W. CARLINE (D.O.C. # 479174)** | **CIVIL ACTION NO. 05-1349-M** |
| **VS.** | **SECTION P** |
| **MADISON PARISH DETENTION CENTER** | **JUDGE JAMES** |
| | **MAGISTRATE JUDGE HAYES** |

## REPORT AND RECOMMENDATION

Before the court is a civil rights complaint (42 U.S.C. §1983) filed *in forma pauperis* by *pro se* plaintiff Demone W. Carline on July 25, 2005. Plaintiff is an inmate in the custody of Louisiana's Department of Public Safety and Corrections (LDOC).[1] He is incarcerated at the Madison Parish Detention Center, Tallulah, Louisiana and complains of conditions of confinement at that facility. He named the Madison Parish Detention Center (MPDC) and the Madison Corrections Center (MCC) as his sole defendants and asks only to be transferred to another facility.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court.

## STATEMENT OF THE CASE

Plaintiff, an LDOC inmate, arrived at MPDC on or about February 12, 2005 where he was assigned to the A Dorm. The dorm was "...stuffy, clouded with smoke..." and lacked

---

[1] Plaintiff has provided his Louisiana Department of Public Safety and Corrections prison identification number on all of his pleadings.

1

ventilation. Over an unspecified period of time plaintiff began to experience chest pains and began "...coughing up unfamiliar substances." Plaintiff has had respiratory difficulties or asthma since birth. Plaintiff and his fellow inmates have complained to jail officials but the problem remained unresolved. [Doc. 1-1, p. 3]

On some unspecified date plaintiff submitted an Inmate Grievance complaining of "...chest pains due to lack of air conditioning..." Plaintiff, a non-smoker, also complained that the lack of proper ventilation bothers him when there are "...40 people smoking at one time." Plaintiff requested a transfer. [Docs. 1-1, paragraph II(B)(1); 1-3, p. 1] Plaintiff's grievance was not answered. [Doc. 1-1, paragraph II(B)(3)]

## LAW AND ANALYSIS

Exhaustion of Administrative Remedies

The Civil Rights of Institutionalized Persons Act, 42 U.S.C. §1997e, was amended by the Prison Litigation Reform Act (PLRA). As amended, §1997e(a) makes mandatory the requirement that prisoners exhaust all available administrative remedies prior to filing suit in court. Section 1997e(a) now provides,

> (a) Applicability of Administrative Remedies – No action shall be brought with respect to prison conditions under section 1983 of this title or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

This is a prison condition case, exactly the type of case which can best be resolved by the prison officials without resort to judicial action. Under current law, plaintiff must <u>completely exhaust</u> the administrative remedy procedure before proceeding herein. The statute provides for <u>no exceptions</u>.[2] The statute precludes any further action on his claims until plaintiff has <u>fully</u>

---

[2] See also *Porter v. Nussle*, 534 U.S. 516, 532, 122 S.Ct. 983, 992, 152 L.Ed.2d 12 (2002), "... we hold that the PLRA's exhaustion requirement <u>applies to all inmate suits about prison life</u>, whether they involve general circumstances or particular episodes, and whether they

exhausted the administrative remedy procedure. See also *Wendell v. Asher*, 162 F.3d 887, 890-91 (5th Cir. 1998)(§1997e(a) "plainly requires that administrative remedies be exhausted before the filing of a §1983 suit, rather than while the action is pending... [t]o hold otherwise would encourage premature filing by potential litigants, thus undermining Congress' purpose in passing the PLRA, which was to provide the federal courts some relief from frivolous prisoner litigation."); *Underwood v. Wilson*, 151 F.3d 292, 296 (5th Cir. 1998)(dismissal for failing to exhaust administrative remedies is justified "as a deterrent to premature filing by...other potential litigants, thus serving the Congressional purpose of providing relief from frivolous prisoner litigation..." and "[b]y choosing to file and pursue his suit prior to exhausting administrative remedies as required, [the plaintiff] sought relief to which he was not entitled--that is, federal court intervention in prison affairs prior to the prison having had the opportunity to address the complaint within its grievance procedures.").

Plaintiff filed an Inmate Grievance concerning the conditions of his confinement. [Doc.1-3, p. 1] He claims that the prison administration did not respond. [Doc. 1-1, paragraph II(B)(3). However, the failure of the prison administration to respond to that grievance did not absolve plaintiff from continuing the ARP process. The instructions plainly printed on the Inmate Grievance form submitted by the plaintiff state, "You must send this form to the Warden within 30 days of the incident complained of. Send it to the Warden by putting it in an Inmate Request Box; if you are in Lock Down, hand it to mail personnel. Keep Copy 4. Make sure all copies are legible. Use a separate form for each grievance. Do not file duplicate grievances. You will receive a response within 30 days. <u>If you do not receive a response within that time,</u>

---

allege excessive force or some other wrong. (citation omitted)"

3

<u>you may file a Request for Warden's Review within the following 5 days</u>." Clearly then, under the MPDC Administrative Remedies Procedure, plaintiff was obliged to submit a Request for Warden's Review when the time limit for administrative response elapsed and there was no answer to his complaint. It appears that he did not do so.

Additionally, as noted above, plaintiff is an inmate in the custody of Louisiana's Department of Public Safety and Corrections and was in their custody upon his entry into MPDC. Administrative remedies procedures have been adopted by the Louisiana Department of Public Safety and Corrections, sheriff's maintaining parish jails or correctional centers, and even private corporations maintaining correctional centers. See LSA R.S. 15:1171 *et seq*.; 22 LA ADC Pt. I, § 325(LAC 22:I.325); LR 28:857 (April 2002); 28:4 La.Reg. 857.

In relevant part, the regulations governing administrative remedies for prisoners in the custody of the Louisiana Department of Public Safety and Corrections provide:

> G. Process
>
> 1. First Step (Time Limit 40 days)
>
> a. <u>The inmate commences the process by writing a letter to the warden, in which he briefly sets out the basis for his claim, and the relief sought</u> ... This letter should be written to the warden within 30 days of an alleged event. (This requirement may be waived when circumstances warrant. The warden, or his designee, will use reasonable judgment in such matters.) The requests shall be screened by the ARP Screening Officer and a notice will be sent to the inmate advising that his request is being processed or is being rejected. The warden may assign another staff person to conduct further fact-finding and/or information gathering prior to rendering his response. <u>The warden shall respond to the inmate within 40 days from the date the request is received at the First Step.</u>
>
> b. For inmates wishing to continue to the Second Step, sufficient space will be allowed on the response to give a reason for requesting review at the next level. There is no need to rewrite the original letter of request as it will be available to all reviewers at

4

each Step of the process.

2. Second Step (Time Limit 45 days)

a. <u>An inmate who is dissatisfied with the First Step response may appeal to the Secretary of the Department of Public Safety and Corrections by so indicating that he is not satisfied in the appropriate space on the response form and forwarding it to the ARP Screening Officer within 5 days of receipt of the decision</u>. A final decision will be made by the Secretary and the inmate will be notified within 45 days of receipt. A copy of the Secretary's decision will be sent to the warden.

*   *   *

4. Deadlines and Time Limits

a. No more than 90 days from the initiation to completion of the process shall elapse, unless an extension has been granted. Absent such an extension, <u>expiration of response time limits shall entitle the inmate to move on to the next Step in the process</u>. Time limits begin on the date the request is assigned to a staff member for the First Step response.

Giving plaintiff the benefit of every doubt, it is clear that he did not exhaust the final administrative remedy that was available to him by filing an appeal to the Secretary of the Department of Public Safety and Corrections.

When plaintiff's initial Inmate Grievance was ignored, he was still required under the regulations to assume that his requests had been denied and to pursue the Second Step remedy by filing an appeal with the Secretary of the Department.

As stated above, plaintiff must have <u>fully</u> exhausted the administrative remedy procedure before proceeding herein. Since plaintiff failed to exhaust administrative remedies prior to filing this suit, his complaint is subject to dismissal on that basis.

Accordingly**,**

**IT IS RECOMMENDED** that plaintiff's Civil Rights Complaint be **DISMISSED** for failure to exhaust all available administrative remedies prior to filing suit as mandated by the provisions of 42 U.S.C. §1997e(a).

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See, Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

**THUS DONE AND SIGNED** in Chambers at Monroe, Louisiana, this <u>20th</u> day of October, 2005.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE